## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## NORTHERN DIVISION

### NO. 2:05-CV-00021-FL

| | |
|---|---|
| JAMES ALAN GELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TOWN OF AULANDER, AULANDER | ) |
| POLICE CHIEF GORDON GODWIN, | ) ORDER |
| in his official and individual capacities, | ) |
| SPECIAL AGENT DWIGHT L. | ) |
| RANSOME, in his individual capacity, | ) |
| WILLIAM N. FARRELL, in his | ) |
| individual capacity, DEBRA GRAVES, | ) |
| in her individual capacity, DAVID | ) |
| FRED HOKE, in his individual | ) |
| capacity, and JOHN AND JANE DOES | ) |
| 1-10, in their official and individual | ) |
| capacities. | ) |
| | ) |
| Defendants. | ) |

This matter comes before the court on plaintiff's motion to exclude the expert testimony of defendant's police practices expert, Isaac Avery ("Avery") (DE #122), and defendant's motion to exclude the expert testimony of a social scientist, Craig W. Haney, Ph.D., J.D. ("Haney") (DE #195), with benefit of Memorandum and Recommendation ("M&R") by United States Magistrate Judge James E. Gates. Defendant filed objections to the M&R December 15, 2008, to which plaintiff responded January 5, 2009. Similarly, plaintiff filed objections to the M&R December 15, 2008, to which defendant responded January 2, 2009. In this posture, the issues raised are ripe for ruling.

## BACKGROUND

Allen Ray Jenkins ("Jenkins") was found murdered in his Aulander, North Carolina home on April 14, 1995. Special Agent Dwight Ransome ("Ransome") served as the lead agent on the State Bureau of Investigation ("SBI") investigation of the murder. Plaintiff became a subject of investigation, and he was eventually tried, convicted, and sentenced to death for the murder of Jenkins. Gell spent 9 years in prison before being retried and acquitted of the crime.

Plaintiff alleged in complaint filed May 2, 2005, that various defendants violated his constitutional and state-created rights when they participated in the investigation and prosecution which culminated in plaintiff's 1998 capital conviction for the murder of Jenkins. In order entered March 27, 2006, this court granted, or granted in part, motions to dismiss of several defendants. Remaining parties participated in mediation on December 5, 2006, which resulted in dismissal of several defendants.

On September 24, 2008, the court granted in part and denied in part motion for summary judgment by Ransome, the sole remaining defendant. Plaintiff's claims at Count I ("42 U.S.C. § 1983 Claim for Fourteenth Amendment Substantive and Procedural Due Process Violations") and at Count V ("Common-law Obstruction of Justice") as set forth therein proceed now to trial. The court's order includes an extensive account of the undisputed facts underlying this case to which reference herein is made.

As plaintiff was either out of the state or in jail from April 4, 1995, through the time Jenkins body was found, the case against him depended on establishing that Jenkins was killed on April 3, 1995. In interviews conducted by Ransome and other investigators, several individuals gave statements that they saw Jenkins alive after that date. Eight of those witnesses were reinterviewed,

2

and the reports from the reinterviews indicate that all of those witnesses either recanted their earlier statement about seeing Jenkins alive after April 3, 1995, or expressed uncertainty as to the date they saw him last.[1] Gell alleges that some or all of the statements to that effect in the reinterview reports were not actually made by the witnesses but, rather, were fabrications by Ransome.

The parties have filed several motions pertaining to the admissibility of expert testimony. On November 4, 2008, this court entered order on defendant's December 31, 2007 motion to exclude several of plaintiff's experts. In that order, the court decided several issues presented by defendant's motion and deferred decision on others until a future hearing at or around time of the final pretrial conference.[2] The court now takes up and considers the remaining two motions addressing the admissibility of expert testimony, both of which it referred to the magistrate judge for M&R.[3]

At hearing on the motions November 14, 2008, plaintiff stated through counsel that he no longer intended to offer the testimony of Haney as to the specific "psychological effects of incarceration on James Alan Gell resulting from his wrongful arrest in 1995 and his conviction and death sentence" or as to "the seriousness and lasting psychological effects of a long period of confinement on someone like Mr. Gell, who was exonerated and released to free society after some 9 years of incarceration."

---

[1]     Counsel for the state prosecution testified at deposition that they did not receive the interview reports of the witnesses who said they saw Jenkins alive after April 3, 2005, and were not reinterviewed.

[2]     Specifically, the court denied defendant's motion to exclude as it applied to the expert testimony of James J. Arends, Allen C. Eberhardt, Murray K Marks, and Paul S. Reeves. The court granted defendant's motion to exclude as it pertained to certain opinions expressed in the expert report of Thomas Streed. While holding that Streed will be permitted to testify at trial, the court stated it would hear further argument regarding the permissible scope of Streed's testimony. Similarly, the court reserved its ruling on the admissibility of the proffered testimony of M.G.F. Gilliland until after hearing, stating that at hearing plaintiff must indicate how he intends to present Gilliland's testimony.

[3]     The October 8, 2008 order also referred to the magistrate judge for decision plaintiff's motion for leave to file surreply to defendant's motion to exclude the expert testimony of Craig W. Haney. Magistrate Judge Gates granted that motion on November 6, 2008.

3

The magistrate judge recommends that this court grant in part and deny in part plaintiff's motion to exclude Avery's testimony, and that this court grant defendant's motion to exclude Haney's testimony with respect to those parts of Haney's testimony plaintiff withdrew from consideration at the motions hearing, and deny the remainder of that motion.

## DISCUSSION

### A.    Standard of Review

#### 1.    Admissibility of Expert Testimony

Rule 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. "Expert testimony is admissible under Rule 702, then, if it concerns (1) scientific, technical or other specialized knowledge that (2) will aid the jury or other trier of fact to understand or resolve a fact at issue." Westberry v. Gislaved Gummi AB, 178 F. 3d 257, 260 (4th Cir. 1999) (citing Daubert v. Merrell-Dow Pharms., 509 U.S. 579, 592 (1993)). The first prong of the analysis examines the reasoning or methodology to ensure reliability, "that is, whether it is supported by adequate validation to render it trustworthy," while the second prong ensures the opinion is relevant to the facts at issue. Id. Reliability and relevance are therefore the cornerstones of the court's examination in determining admissibility of expert testimony. See Daubert, 509 U.S. at 589; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999).

A trial judge faced with a proffer of expert testimony must conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at

4

592-93. This "gatekeeping obligation" applies to all expert testimony, and not only testimony based in science. Kumho Tire Co., 526 U.S. at 147. Ultimately, the proponent of expert testimony has the burden to "establish its admissibility by a preponderance of proof." Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001).

"In making its initial determination of whether proffered testimony is sufficiently reliable, the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony involved." Westberry, 178 F.3d at 261. "[T]he law grants a district court the same broad latitude when it decides how to determine reliability [of expert testimony] as it enjoys in respect to its ultimate reliability determination." Kumho Tire Co., 526 U.S. at 142. While reliability of knowledge or methodology can be demonstrated through "testing, peer review, evaluation of rates of error, and general acceptability," the court has broad discretion, and its evaluation should be "always a flexible one." Oglesby v. General Motors Corp., 190 F.3d 244, 250 (4th Cir. 1999). The court also looks to the expert's qualifications in determining reliability. Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993). When an expert's qualifications are challenged, "the test for exclusion is a strict one, and the purported expert must have neither the satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered." Id.

To be relevant, the proposed expert testimony must be helpful to the trier of fact. See Daubert, 509 U.S. at 591. "Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." Kopf, 993 F.2d at 377.

The court must balance its broad discretion and flexibility when determining the admissibility of expert testimony with the concerns of Rule 403 to ensure that the probative value of the proffered

5

testimony is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403; see U.S. v. Dorsey, 45 F.3d 809, 815 (4th Cir. 1995). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." Daubert, 509 U.S. at 595 (internal citations omitted).

**2. Review of a Magistrate Judge's Recommendation as to a Non-Dispositive Matter**

Parties disagree over what standard of review should be applied to those portions of the M&R to which objection has been made. Plaintiff contends that as the M&R addresses a non-dispositive matter, the district court should only set aside those portions that are clearly erroneous or contrary to law. Defendant contends that as the matter has been referred for recommendation rather than order, the court should conduct *de novo* review of the parts of the M&R to which specific objection has been made.

A district court may designate a magistrate judge to decide a non-dispositive matter. See 28 U.S.C. § 636(b)(1)(A). A district court in reviewing this decision is to set aside any portion that is "clearly erroneous or contrary to law." Local Rule 72.4(a), EDNC; see also Fed. R. Civ. Pro. 72(a) On the other hand, as certain constitutional issues arise when a magistrate judge decides a dispositive matter, the rules provide that a magistrate judge is to enter "findings and recommendations" on these matters rather than decision. Fed. R. Civ. Pro. 72(b)(1); see also Segal v. L.C. Hohne Contractors, Inc., 303 F. Supp. 2d 790, 793 (S.D. W. Va.. 2004). A district court is to review *de novo* any portion of the recommendation to which proper objection has been made. Local Rule 72.4(b), EDNC; Fed. R. Civ. Pro. 72(b)(3). However, when a district court refers a non-dispositive motion to a magistrate

6

judge for recommendation, rather than order, as it has done here, the courts of this circuit are split as to what standard of review should be applied. Compare Asterbadi v. Lietess, 2005 WL 2009276, *3 (E.D. Va. Aug. 22, 2005) ("[T]he Magistrate's Report and Recommendation was not dispositive of any claim or defense. Accordingly, the Court will review the Report and Recommendation under the clearly erroneous or contrary to law standard.") with Mullins v. Hinkle, 953 F. Supp. 744, 746 n.1 (S.D. W. Va. 1997) ("The Court has determined that *de novo* review applies to any timely objections to a Magistrate Judge's Findings and Recommendations, whether the findings and recommendation relate to a dispositive or a nondispositive matter.")

Whether this court should apply Rule 72(a) and conduct "clearly erroneous" review or Rule 72(b)(3) and conduct *de novo* review hinges on the court's determination of what distinction should govern: whether a matter is dispositive or non-dispositive (as emphasized by the court in Asterbadi), or whether a magistrate judge has filed order or recommendation (as emphasized by the court in Mullins). The court concludes here that the rationale of Mullins is the more sound, and, therefore, reviews parties' objections *de novo*. Although the court could have referred these non-dispositive motions for decision, it specifically referred them for treatment in accordance with processes established to provide it with a considered recommendation. A decisional process which provides for *de novo* review of the portions of the M&R to which parties object and allows the parties through objection and response to more clearly articulate and refine this scope before the court enters final decision was employed in this regard. Accordingly, the court reviews those portions of the M&R to which either party has objected *de novo*.[4]

---

[4]      That the court has authority to conduct *de novo* review of non-dispositive matters is clear under the Local Civil Rules, EDNC. When the magistrate judge enters order on non-dispositive matters, while the district judge must set aside any "clearly erroneous" portion of the order, she may also reconsider any matter *sua sponte*. Local Civil

7

**B.      Plaintiff's Objections as to Defendant's Expert Isaac Avery**

The court first considers plaintiff's objections to those parts of the M&R addressing

plaintiff's motion to exclude the testimony of Avery. The M&R recommends the court exclude the

vast majority of Avery's proffered testimony on the grounds that he is not qualified to testify as an

expert on homicide investigation practices or the division of labor between an investigator and the

District Attorney's office.[5] (M&R, pp. 7-19.) Accordingly, the M&R recommends the court admit

only the following proffered opinion:

> Opinion A: The SBI . . . [section of opinion recommended excluded] . . . has a
> reputation throughout the country as having highly qualified officers who meet the
> highest standards of integrity and ability. The training of SBI agents has for the last
> 30 years far exceeded the State required training for law enforcement officers and the
> training of any other law enforcement agency in North Carolina. The SBI is routinely
> relied upon by and provides assistance to every state and local law enforcement
> agency in North Carolina as well as the Federal Bureau of Investigation and other
> federal law enforcement agencies. My experience in the field of law enforcement
> training and teaching law enforcement officers in this State and throughout the
> county [sic] is the basis of this opinion.

(Avery Rep., p. 3, DE #123-2.) Plaintiff objects to the admissibility of the first and third sentence

of this opinion, but not the second sentence regarding training of SBI agents.

Plaintiff contends Avery's statement that the SBI "has a reputation throughout the country

as having highly qualified officers who meet the highest standards of integrity and ability" is

inadmissible because the only possible relevance of such testimony is the implication that Ransome

and other SBI agents the defense will call as witnesses must be of the highest integrity. Plaintiff

argues this is impermissible reputation evidence as to both defendant and the other SBI witnesses.

Rule 72.4(a), EDNC. The court surely may conduct as thorough a review of a recommendation as it may of an order.

     [5]     The M&R also noted a substantial danger under Rule 403 that the jury may give Avery's opinions undue weight because of his law degree and experience with law enforcement, even though these credentials do not bestow upon him expertise as to the particular opinions offered. (M&R, p. 9.)

In a civil case where a finding for the plaintiff would be tantamount to a finding that the civil defendant committed a criminal act, defense counsel may present evidence of the defendant's good character or reputation for a pertinent trait as though it was a criminal action. See Washington v. Buraker, 2006 WL 1049506, *1 (W.D. Va. April 13, 2006) (denying plaintiff's motion to bar defense counsel from introducing evidence as to defendant's good character or reputation in a wrongful conviction civil case where plaintiff alleged defendant police officer fabricated evidence against him). That Avery's statement may be construed by the jury to apply to the credibility of the other SBI agents who will testify is troublesome, however.

As a preliminary matter, the court agrees with defendant that plaintiff errs in reading United States v. Cecil, 836 F.2d 1431 (4th Cir. 1988) to categorically exclude all expert testimony as to another witness's credibility. In Cecil, defendant offered a psychiatrist as an expert witness to testify that a government witness's "personality disorder precludes him from providing truthful testimony, in all medical probability, given the circumstances at hand."[6] Id. at 1441 n.4. In holding that the district judge did not err in refusing to admit the expert's testimony, the court of appeals stated, "[T]he authorities seem uniform that a psychiatrist may not testify to the credibility of a witness." Id. at 1441. This should not be read so broadly as to exclude any expert testimony on the credibility of a witness, particularly as the court in Cecil cited the Ninth Circuit for the proposition that "opinion testimony on credibility is limited to character." Id. at 1442.[7] Indeed, in striking psychiatrist testimony as to the credibility of witnesses, courts seem particularly concerned that the

---

[6]     The particular circumstance the psychiatrist was referring to was the existence of a plea agreement under which the government witness stood to personally benefit for his testimony against the defendant.

[7]     Here, Avery's statement goes precisely to the SBI witnesses' character and reputation for integrity, whereas the proffered testimony of the expert in Cecil went to a lay witness's psychological capacity for truth-telling when testifying pursuant to a plea agreement.

9

psychiatrist's expertise will usurp the role of the jury: "It is now suggested that psychiatrists and psychologists have more of this expertise than either judges or juries . . . in determining the veracity of witnesses . . . [this] may cause juries to surrender their own common sense in weighing testimony." Id. (quoting United States v. Barnard, 490 F.2d 907, 912 (9th Cir. 1973). A police practices expert's testimony regarding the general reputation for integrity of SBI agents does not present the same danger of the jury blindly deferring to an expert's credibility determination that a psychiatrist's testimony as to the truth-telling ability of a particular witness presents.

Nevertheless, a more fundamental rule of evidence prevents the court from deciding now the admissibility of the statement at issue. "[E]vidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." Fed. R. Evid. 608(a)(2); see also United States v. Henderson, 717 F.2d 135, 137 (4th Cir. 1983) ("As a general rule a witness's credibility may not be rehabilitated unless it first has been challenged."). The admissibility of Avery's statement depends on the testimony of the SBI witnesses, as well as the trial strategies employed by plaintiff's counsel. In the event the SBI witnesses' credibility is not attacked, the admittedly slight probative value of Avery's statement may be substantially outweighed by the danger of it misleading the jury in evaluating their credibility. See Fed. R. Evid. 403. As such, it is not possible at this point to know whether the proper course at trial will be to admit the statement unconditionally, admit it subject to a limiting instruction, or exclude it. Accordingly, the court deems it prudent to take up at trial the admissibility of Avery's proffered statement as to the reputation of the SBI for having agents of high integrity.

With regard to Avery's proffered opinion that the "SBI is routinely relied upon by and provides assistance to every state and local law enforcement agency in North Carolina as well as the

10

Federal Bureau of Investigation and other federal law enforcement agencies," plaintiff's objection is without merit. Plaintiff contends that the only possible relevance of such testimony is the implication that SBI agents must be trustworthy because other agencies rely on them, and therefore Ransome must be trustworthy, and therefore he did not fabricate evidence.[8] The court finds Avery's proffered opinion to be relevant for a far more direct purpose.

As the M&R addresses, the jury in this case must evaluate the actions of an officer of the SBI in investigating a murder with other SBI agents and members of the Town of Aulander Police. In doing so, it would be helpful to the jury to have background information concerning typical interactions between the SBI and other law enforcement agencies, particularly as plaintiffs' briefings indicate that at trial plaintiff will question defendant Ransome's motives and attempt to show he pursued Gell's conviction overzealously after taking a personal stake in the matter. (See Pl's Mem. in Opp. to S.J., DE #162, pp. 15-17.) Further, the court finds such information to be outside the everyday knowledge and experience of a layperson, and thus a proper area for expert testimony. This statement does not strongly suggest a general propensity for truth-telling on the part of SBI agents as does the previously discussed statement, and so the court does not find it presents a substantial danger of misleading the jury in its determination as to the credibility of the SBI witnesses, even if that credibility is not attacked at trial. See Fed. R. Evid. 403.

After thorough consideration of the issues addressed above, as well as those not objected to, the court adopts as its own those portions of the M&R that pertain to plaintiff's motion to exclude the testimony of Avery, except that the court withholds judgment until trial on the admissibility of

---

[8]    Plaintiff argues this implication of trustworthiness could also run to the SBI agents who defendant plans to call as witnesses in this case. The chain of inferences plaintiff relies on to draw this conclusion is tenuous.

11

Avery's proffered statement as to the SBI's reputation for having officers who meet high standards of integrity.

## C. Defendant's Objections as to Plaintiff's Expert Craig W. Haney

The court now takes up defendant's objections to those parts of the M&R addressing defendant's motion to exclude the testimony of Haney. Haney offered opinions on three topics in his expert report: (1) "the psychological effects of incarceration in general, and also the effects of being incarcerated under certain specific conditions of confinement;" (2) "the psychological effects of incarceration on James Alan Gell resulting from his wrongful arrest in 1995 and his conviction and death sentence meted out in February, 1998, through the time of his release in 2004;" and (3) "the seriousness and lasting psychological effects of a long period of confinement on someone like Mr. Gell, who was exonerated and released to free society after some 9 years of incarceration." (Haney Rep., p. 1, DE #212.) At motions hearing before Magistrate Judge Gates on November 14, 2008, plaintiff stated that he no longer intended to proffer Haney's testimony on topics (2) and (3) (generally, sections V and VI of Haney's expert report). (M&R, p. 19-20.) Accordingly, the M&R recommends that those sections of defendant's motion to exclude Haney's testimony that apply to topics (2) and (3) be granted. The M&R recommends defendant's motion as it applies to topic (1) be denied.

Defendant's objection to the recommendation that Haney be allowed to testify to the psychological effects of incarceration in general goes to the relevance of such testimony.[9] Defendant contends that as plaintiff no longer intends to offer testimony from Haney concerning the specific psychological effects of incarceration on Gell, Haney's testimony concerning the general

---

[9]     Defendant does not dispute Haney's qualifications as an expert. (Deft.'s Obj. to M&R, p. 7.)

psychological effects of incarceration is no longer sufficiently linked to the particular facts of the case as to be relevant. In support of this contention, defendant cites an out-of-circuit case for the proposition that "generalized expert testimony that is factually disconnected from the case is inadmissible because it does not assist the jury in rendering a verdict based on the material facts in issue." Trout v. Milton S. Hershey Medical Center, 576 F. Supp. 2d 673, 677 (M.D. Pa. 2008).

Defendant essentially argues that because Haney will only testify to the psychological effects of incarceration in general, his testimony is so factually disconnected from the case that it is irrelevant. The court does not agree. The relevance test typically presents "a low barrier to admissibility" that is met if the evidence is "worth consideration by the jury." United States v. Leftenant, 341 F.3d 338, 346 (4th Cir. 2003). Plaintiff has indicated that Gell and other lay witnesses will testify at trial as to Gell's experience while incarcerated and how it affected him. Such an experience is well outside the everyday knowledge of the average juror, and as the M&R adeptly explains, Haney's expert testimony concerning the common psychological effects resulting from conditions of confinement similar to Gell's would be helpful to the jury in evaluating the testimony of Gell and other lay witnesses. (M&R, p. 24.) Further, the court finds Haney's testimony does not present any danger of unfair prejudice, confusion of the issues, or misleading the jury that substantially outweighs its probative value in helping the jury to understand the psychological effects of confinement. Accordingly, the testimony also meets the standard for admissibility under Federal Rule of Evidence 403. The defendant will have adequate opportunity during cross-examination to attempt to distinguish any testimony offered by Haney from the particular experience of Gell.

This testimony would be admissible even if Trout controlled. Defendant reads Trout in a manner that would render any generalized expert testimony inadmissible as insufficiently related to

13

the particular facts of the case. Such a reading is too broad. In Trout, plaintiff alleged the defendant was negligent in performing surgery to amputate plaintiff's leg. 576 F. Supp. 2d at 675. During cross-examination of plaintiff's expert witness at deposition, defendant elicited testimony in which the witness opined on the recovery experience of patients who undergo "limb salvage" treatment, an alternative to amputation. Id. at 675-76. In holding the testimony was so factually disconnected from the case as to be irrelevant, the court stated, "[The witness's] testimony is simply an expose about limb salvage that does not provide the jury with probative information about the risks or prognosis that [plaintiff] likely would have encountered had he elected to pursue such treatment." Id. at 679.[10] In general terms, the testimony excluded in Trout concerned an experience plaintiff did not undergo that the expert did not attempt to relate to plaintiff's particular circumstances. Here, on the other hand, Haney's testimony is based on research regarding conditions of incarceration faced by plaintiff, as to which plaintiff's counsel has indicated Gell and others will testify. While Haney's testimony may be "generalized," that in itself does not render it "factually disconnected from the case" as the excluded testimony in Trout was.

Also where plaintiff has stipulated that he will not offer at trial any expert opinion by Haney as to specific psychological effects of incarceration on Gell during and after incarceration, the court hereby also adopts the M&R in granting defendant's motion to exclude those portions of Haney's testimony that pertain to those topics. Plaintiff may not offer evidence through Haney as to the specific psychological effects of incarceration on Gell. Accordingly, those parts of Haney's expert report that address how Gell individually was affected by incarceration are excluded. The court

---

[10]     The witness himself even explained that his testimony did not reflect the particular medical issues faced by plaintiff. Trout, 576 F. Supp. 2d at 677.

14

notes that it is the substance of the testimony plaintiff seeks to introduce that governs its admissibility, not the title of the section where it is located in the expert report.

After careful consideration, the court adopts the M&R as it applies to defendant's motion to exclude the testimony of Haney.

## CONCLUSION

For the reasons set forth above, the court rules as follows:

1.  Plaintiff's motion to exclude the expert testimony of Isaac Avery (DE #122) is GRANTED as it applies to Opinions B through N of Avery's expert report, and Avery will not be permitted to testify regarding such statements or opinions. Plaintiff's motion is likewise GRANTED as it applies to Avery's statement in Opinion A regarding the SBI's "premier" status.

2.  That part of plaintiff's motion that applies to the remainder of Opinion A is DENIED, with the exception of the issue of the admissibility of Avery's proffered statement regarding the SBI's reputation for having highly qualified officers who meet the highest standards of integrity and ability, on which the court reserves judgment until it may further evaluate it within the context of trial.

3.  Defendant's motion to exclude the expert testimony of Craig Haney (DE #195) is GRANTED with respect to topics (2) and (3) and DENIED with respect to topic (1). Haney will be permitted to testify as to "the psychological effects of incarceration in general, and also the effects of being incarcerated under certain specific conditions of confinement."

4.  The court defers its decision on the admissibility of Avery's statement regarding SBI

15

agents' reputation for integrity, as indicated above.

5.      In light of decisions herein, and where in prior order the court denied defendant's

motion to exclude as it applied to the expert testimony of James J. Arends, Allen C.

Eberhardt, Murray K Marks, and Paul S. Reeves, and granted defendant's motion to

exclude as it pertained to certain opinions expressed in the expert report of Thomas

Streed, the court left open decision on the permissible scope of Streed's testimony,

and similarly reserved ruling on the admissibility of the proffered testimony of

M.G.F. Gilliland until after hearing, at which time defendant may renew any issue

for decision bearing on Gilliland's reliance on Marilyn T. Miller, it is necessary now

to set a date for hearing and final pre-trial conference, and trial. Separate order will

issue bearing on same.

SO ORDERED, this the 20 day of January, 2009.

LOUISE W. FLANAGAN
Chief United States District Judge